## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CAROL WILLIAMS,

      Plaintiff,

               v.

KAISER FOUNDATION HEALTH PLAN OF GEORGIA, INC.,

      Defendant.

Civil Action No.
1:22-cv-02744-SDG

## OPINION AND ORDER

This matter is before the Court on United States Magistrate Judge John K. Larkins III's Final Report and Recommendation (R&R) [ECF 33], which recommends that Defendant Kaiser Foundation Health Plan of Georgia, Inc.'s (Kaiser) motion for summary judgment [ECF 22] be granted. Plaintiff Carol Williams filed objections. After careful consideration of Williams's objections, the Court **ADOPTS IN PART** and **DECLINES IN PART** the R&R. Kaiser's motion for summary judgment is **GRANTED** as to Counts I—III (the ADA discrimination and reasonable accommodation claims), but **DENIED** as to Counts IV-VI (the ADA retaliation claim, FMLA interference claim, and FMLA retaliation claim).

## I.     BACKGROUND

The Court incorporates by reference the thorough recitation of the facts as set forth in the R&R.[1] Williams alleges that Kaiser violated her rights under both the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, and the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. § 12111, *et seq.*[2] Williams is a licensed practical nurse (LPN) who was employed by Kaiser from May 2016 to February 2022.[3] Williams suffers from irritable bowel syndrome (IBS) and migraines, which can require bed rest to recover.[4] Until September 2021, Williams took FMLA leave for these necessary periods of recovery.[5]

### A.     Kaiser's FMLA process

Kaiser utilizes a process to approve and track employee FMLA hours.[6] First, an employee's supervisor initiates a request on behalf of the employee through Kaiser's national human resources department.[7] Then, the employee must fill out

---

[1]  *See Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (noting that, to the extent there are no specific objections to factual findings by a magistrate judge, there is no requirement that the district court review those findings *de novo*).

[2]  ECF 1, ¶ 1.

[3]  *Id.* ¶ 8.

[4]  ECF 22-2, ¶¶ 2–3, 38.

[5]  *Id.* ¶ 18.

[6]  *Id.* ¶¶ 8–13.

[7]  *Id.* ¶ 8.

a medical certification form for approval.[8] When an employee is approved, Kaiser provides documentation that informs the employee how many FMLA hours she is approved for, and the time frame in which those hours can be used.[9] Kaiser tracks employee FMLA hours in twelve-month increments, commencing when the employee first uses the FMLA leave.[10] At the end of the twelve-month increment, the employee must submit a new medical certification form to qualify and obtain hours for the next twelve-month period.[11] Recertification is not automatic.

Williams took FMLA leave without issue between 2017 and 2020. Then, in October 2020, Williams received notice that she was approved for intermittent FMLA leave during the twelve-month period ending in September 2021.[12] For reasons that are not clear from the record, Williams again requested FMLA leave hours the following month, in November 2020.[13] In December, Williams received notice that she was approved for FMLA leave during the twelve-month period ending on November 11, 2021.[14]

---

[8]   *Id.* ¶¶ 9–10.

[9]   *Id.* ¶ 12.

[10]  *Id.* ¶ 13.

[11]  *Id.* ¶ 16.

[12]  ECF 32-2, at 1–2; *see also* ECF 22-2, ¶ 18.

[13]  ECF 32-2, at 3.

[14]  ECF 32-2, at 3–4. Kaiser provided the statutory maximum of 480 hours less the 85.19 hours Williams had used since her October 2020 certification. It seems

The parties appear to agree that Williams's FMLA period actually ran from September 2020 to September 2021.[15] Nonetheless, Williams received a letter from Kaiser in October 2021 *denying* her renewal request because she had already exhausted her yearly entitlement, suggesting that the twelve-month period ending in November 2021 was the operative period.[16]

### B.    Facts giving rise to this case

In August 2021, Williams was staffed by Kaiser in an outdoor COVID-19 testing facility and was concerned she would not have access to a bathroom while in the tent.[17] Williams's bathroom access concerns were quickly resolved, but a miscommunication with the nurse manager led Angenetta Dandy, a "Leave and Disability Management Consultant" for Kaiser, to contact Williams about other potential accommodations she might need.[18] Dandy asked Williams to have her doctor complete a Medical Inquiry Form for Employee ADA Accommodation Request, to ensure Kaiser was providing proper accommodations to Williams.[19]

---

that this effectively provided Williams with 480 hours of leave over a shorter period of time than the statutorily designated period of *twelve* months. 29 U.S.C. § 2612(a)(1).

[15] *See* ECF 25, ¶ 18.

[16] ECF 32-4, at 1–2.

[17] ECF 22-2, ¶¶ 26–27.

[18] *Id.* ¶¶ 20, 31–32.

[19] *Id.* ¶¶ 32–33; *see also* ECF 32-1.

4

This form is different from the medical certification form that is required by Kaiser for FMLA purposes.[20]

Williams met with her doctor and he completed the ADA form in September 2021.[21] The form stated that Williams had permanent impairments that interfered with her ability to interact with others, perform manual tasks, stand, work, and eat.[22] Additionally, the doctor wrote, "[d]ue to the severe pain, she's unable to work and has to recover at home on bed rest."[23] In the section of the form that asked for proposed accommodations for these medical conditions, the doctor wrote that when Williams had "a severe flare-up at work and she's unable to work please allow her to recover at home."[24] This was the only proffered accommodation.[25] In addition to this form, Williams's doctor also submitted a letter in support of her need for bed rest.[26]

Upon receiving this form, Williams's supervisor (Thomas Bodie) and Bodie's supervisors concluded that Williams's limitations would interfere with her

---

[20]   *See* ECF 22-2, ¶ 16.

[21]   ECF 22-2, ¶ 34.

[22]   *Id.* ¶ 35.

[23]   *Id.* ¶ 38 (quoting ECF 28-1a, at 2).

[24]   *Id.* ¶ 39 (quoting ECF 28-1a, at 2).

[25]   ECF 25, ¶ 50.

[26]   ECF 22-4, at 3.

ability to do her job.[27] The supervisors were particularly concerned with Williams's difficulty standing because she had fallen while at work on one previous occasion.[28] The parties agree that the only accommodation available to Williams when she was having a flare-up was unstructured, intermittent time off.[29] The parties further agree that regular physical attendance at her job was an essential function of her role.[30] Because the only accommodation available would not allow Williams to perform an essential function of her job, Bodie decided that the limitations identified by Williams's doctor meant she could not perform her job as an ambulatory nurse.[31]

By the end of September 2021, Williams had utilized all of her allotted intermittent FMLA hours for the twelve-month period approved by Kaiser.[32] So, on September 23, Williams asked her supervisor to begin the recertification process with national HR.[33] While waiting for a response from national HR, on September 29, 2021, her supervisors and Dandy placed Williams on a 90-day leave

---

[27]   ECF 22-2, ¶¶ 41, 46.

[28]   *Id.* ¶ 43.

[29]   ECF 25, ¶ 50.

[30]   *Id.* ¶ 51.

[31]   ECF 22-2, ¶ 46.

[32]   ECF 25, ¶ 72.

[33]   ECF 22-2, ¶ 73.

of absence because Williams was no longer able to perform an essential function of her job, i.e., regular physical attendance, and she did not have any leave available.[34] This 90-day period was meant to give Williams the opportunity to find another position within the organization that met both her qualifications and medical limitations.[35] As stated above, Williams's FMLA request was denied in October 2021 by national HR because she had purportedly already exhausted her entitlement to FMLA leave for that twelve-month period.[36] At one point, Williams asked if there would have been a different outcome—presumably meaning whether she would not have been placed on leave—if she still had FMLA leave available, to which Dandy responded, "Yes."[37]

Williams met with a representative from HR to help facilitate her job search.[38] Williams understood that if she did not secure a new position by January 4, 2022, she would be terminated.[39] Williams applied to other positions within the

---

[34] *See id.* ¶¶ 47, 50–52, 63.

[35] *Id.* ¶ 63.

[36] This denial did not indicate when her then-current twelve-month period ended. ECF 32-4, at 1–2. The reasonable inference in Williams's favor to be drawn from the denial is that Kaiser was treating her FMLA-leave entitlement as ending in the future—November 2021 rather than having already ended in September 2021.

[37] *Id.* ¶ 73.

[38] *Id.* ¶ 64.

[39] ECF 25, ¶ 67.

organization.[40] For each of the positions Williams applied to, regular physical attendance was an essential job duty.[41] When Dandy spoke with managers of the departments to which Williams applied, the managers told Dandy they were not able to provide an accommodation that involved unstructured time off.[42] Meanwhile, Williams asked Bodie to submit a new request for FMLA leave.[43] On January 10, 2022, Kaiser's national HR denied Williams's request for FMLA leave because she never provided the proper medical recertification paperwork.[44]

Kaiser terminated Williams's employment on February 10, 2022, because she was not able to work in her previous role with the limitations provided by her doctor and she was unable to secure another role in the organization.[45] Williams filed this case on July 13, 2022, asserting six claims for violations of her rights under the FMLA and ADA:

- Count One: ADA discrimination for terminating her employment;

- Count Two: ADA discrimination for failing to hire her for any of the positions to which she applied;

---

[40]   ECF 22-2, ¶¶ 68–69.

[41]   *Id.* ¶ 88.

[42]   *See id.* ¶ 85.

[43]   ECF 22-2, ¶¶ 92–95.

[44]   *Id.* ¶¶ 96–97; ECF 32-4, at 1–2.

[45]   ECF 25, ¶¶ 125, 134.

- Count Three: denial of a reasonable accommodation under the ADA;

- Count Four: ADA retaliation for requesting a reasonable accommodation;

- Count Five: FMLA interference by terminating her employment; and

- Count Six: FMLA retaliation for exercising her statutorily protected rights.[46]

Kaiser filed a motion for summary judgment on all claims on July 5, 2023.[47] The R&R recommended that the motion be granted, finding no dispute of material fact on any of Williams's six claims. Williams objected.

## II.   OBJECTIONS TO A REPORT AND RECOMMENDATION

A party challenging a report and recommendation issued by a United States Magistrate Judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). The district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. ex rel. Ernest S. v. State Bd. Of Educ. Of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

---

[46]   ECF 1, at 1, 27.

[47]   ECF 22, at 25.

### III.   DISCUSSION

The Court agrees with the R&R that Kaiser's motion for summary judgment on the ADA discrimination and reasonable accommodation claims should be granted. However, the Court disagrees with the recommendation that Williams's FMLA and retaliation claims be dismissed.

### A.   The ADA claims

The R&R concluded that Williams was not a qualified individual under the ADA because she could not perform an essential function of her job—regular physical attendance.[48] *See Everett v. Grady Mem'l Hosp. Corp.*, 703 F. App'x 938, 942–43 (11th Cir. 2017). Williams's objections to this portion of the R&R are two-fold: She argues that (1) she is a qualified individual because she "satisfactorily performed her job for four years with the same intermittent leave due to her disabilities" and (2) she was terminated *because* of her disabilities.[49] To that end, Williams argues that the R&R impermissibly weighed evidence rather than viewed it in the light most favorable to her.[50]

To establish a *prima facie* case under the ADA, a plaintiff must show she (1) has a disability,[51] (2) was a "qualified individual" at the relevant time, and

---

[48]   ECF 33, at 29–30.

[49]   ECF 35, at 10, 15.

[50]   *Id.* at 10.

[51]   The parties do not contest that Williams's health conditions are a disability.

(3) was subjected to unlawful discrimination because of her disability. *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023). A "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The reasonableness of an accommodation is "generally a question of fact." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013*)* (citing *Haschmann v. Time Warner Ent. Co.*, 151 F.3d 591, 601 (7th Cir. 1998)). However, a court can determine an accommodation is unreasonable as a matter of law where the accommodation "does not allow someone to perform his or her job duties in the present or in the immediate future." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). Further, the Eleventh Circuit has held that "prior accommodations do not make an accommodation reasonable." *Id.* (citing *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997)).

Williams is not a "qualified individual." The parties agree Williams worked as an LPN in an ambulatory setting and regular physical attendance was an essential function of her role.[52] The only accommodation offered by Williams was that Kaiser allow her to take intermittent leave without notice. This would not

---

[52] *See supra* note 32–33 and accompanying text.

allow her to regularly and reliably attend her job. Because regular, reliable, and physical presence is an essential function of her job as a nurse, intermittent and spontaneous leave is not a reasonable accommodation as a matter of law. The R&R conducted a thorough and accurate analysis of the case law addressing this issue, which the Court adopts.[53]

Williams argues that FMLA leave is a reasonable accommodation. But this misconstrues the relationship between the FMLA and ADA. The FMLA analysis is entirely separate from the ADA analysis. There is a statutory distinction between these two Acts: "[A]n employee seeking FMLA leave is by nature arguing that he *cannot* perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he *can* perform the essential functions of the job."[54] In other words, it cannot be that Williams must take intermittent leave because she is unable to perform essential job functions *and* that she is a qualified individual because she *can* perform essential job functions. As the R&R points out, "FMLA is not a reasonable accommodation under the ADA; rather, it is a right enforceable under a separate statutory provision." *Williams v. Outokumpu Stainless*

---

[53] ECF 33, at 19–23. *See Aponte v. Akima Glob. Servs. LLC*, No. 17-24184-CIV-MARTINEZ-Otazo-Reyes, 2022 WL 2289646, at *11 (S.D. Fla. May 31, 2022) (collecting cases).

[54] *Id.* at 24 (emphasis added) (quoting *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791–92 (5th Cir. 2017)).

*USA, LLC*, No. CV 20-215-CG-MU, 2021 WL 4822832, at *12 (S.D. Ala. Oct. 15, 2021)

(quoting *Trevino v. United Parcel Serv.*, No. 3:08-CV-0889-B, 2009 WL 3423039, at

*12 (N.D. Tex. Oct. 23, 2009)), *appeal dismissed*, No. 21-13981-GG, 2022 WL 16907554

(11th Cir. May 25, 2022). Put simply, Williams's entitlement to FMLA leave does

not make her a qualified individual under the ADA because it does not allow her

to complete an essential job function—reliable physical presence at work. Since the

Court concludes that Williams is not a qualified individual under the ADA, the

analysis ends here, and the Court need not address the remainder of Williams's

ADA objections.

### B.    FMLA interference claim

   FMLA interference in the Eleventh Circuit requires proof that an employee

(1) "was denied a benefit to which she was entitled under the FMLA," and (2) as a

result "was prejudiced in some way that is remediable by either damages or

equitable relief," *Lapham v. Walgreen Co.*, 88 F.4th 879, 896 (11th Cir. 2023)—that is,

both (1) interference and (2) prejudice. The first part—interference—requires the

denial of a benefit, and the Eleventh Circuit has been clear that the FMLA entitles

employees whose denial is actionable to two benefits: the right to take leave, and

the right to be reinstated upon returning from leave. *White v. Beltram Edge Tool

Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015); *see also Lapham*, 88 F.4th at 896

(permitting an FMLA interference claim to be brought either "based on the denial

of certain days off," or "based on [the plaintiff's] termination"). An employee need only demonstrate by a preponderance of the evidence she was entitled to the benefit that was denied. *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.2d 1199, 1206–07 (11th Cir. 2001).

Williams first objects to the R&R's conclusion that Kaiser did not interfere with her FMLA rights because she failed to submit all necessary paperwork.[55] Williams relies on 29 U.S.C. § 2615(a)(1) to argue that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."[56]

While it is true Kaiser is entitled to require Williams to abide by its procedure to approve FMLA leave, the R&R erred in concluding as a matter of law that Kaiser did not interfere with Williams's FMLA rights.[57] Here, Kaiser required its employees to annually recertify by providing medical certification paperwork.[58]

There are three relevant periods for the purposes of determining Williams's FMLA eligibility: (1) the twelve-month period ending in September 2021; (2) the

---

[55]  ECF 35, at 4. The Court construes Williams's argument in this regard to be referencing the time period after September 2021.

[56]  *Id.* (quoting 29 U.S.C. § 2615(a)(1)).

[57]  *See* ECF 33, at 33.

[58]  ECF 22-2, ¶ 16.

twelve-month period ending in November 2021; and (3) the period from November 11, 2021, to February 2022 when Williams was ultimately terminated. The R&R correctly determined that Williams was not entitled to any more FMLA leave in the first period because it is undisputed that she had already exhausted her leave during that time frame.[59]

However, the second period is not so easy a call—particularly on a motion for summary judgment. The parties seem to agree that Williams's FMLA twelve-month period ran from September to September each year.[60] Thus, according to both parties, in September 2021 Williams should have been eligible to recertify for FMLA leave for the twelve-month period ending in September 2022.[61] Williams, through her supervisor, did just that.[62] But this application was denied because Williams had purportedly already exhausted her twelve-month leave entitlement (presumably based on Kaiser's incorrect determination that Williams's eligibility period ran until November 2021).[63] The response from national HR did not inform Williams that she would (presumably under its assessment) be eligible to reapply

---

[59]   ECF 25, ¶ 72.

[60]   ECF 25, ¶ 18.

[61]   ECF 32-2, at 1–2; *see also* ECF 22-2, ¶ 18.

[62]   ECF 32-4, at 1–2.

[63]   *Id.*

in November 2021.[64] In other words, there is a question as to whether Kaiser incorrectly and inexplicably extended Williams's leave to a period of fourteen months (in contravention of its own policy),[65] thereby interfering with Williams's right to recertify during the right time period after twelve months. After carefully reviewing the record, undersigned is left with too many questions about the eligibility dates and the reasons for Kaiser's decisions during this second timeframe to determine as a matter of law whether Kaiser interfered with Williams's right to leave.

Regarding the final period, November 11, 2021, to February 2022, the R&R concluded that Williams was not entitled to FMLA leave because she did not recertify.[66] But there are material facts in dispute that preclude that determination. Employers are explicitly permitted to require certification from the employee's health care provider when the employee seeks FMLA leave. 29 C.F.R. § 825.305(a). The employee bears the responsibility of providing the proper paperwork to create a complete and sufficient certification for FMLA leave. *Walker v. UPS Inc.*, No. 21-11267, 2022 U.S. App. LEXIS 28712, at *2 (11th Cir. Oct. 17, 2022). Here, it is undisputed that Williams was aware of her burden and yet did not provide the

---

[64]  *See id.*

[65]  *See* discussion *supra* Section I.

[66]  ECF 35, at 34.

*proper* recertification paperwork to Kaiser.[67] However, it is unclear if Kaiser *actually possessed* the required information in another form and nonetheless refused to certify her because she did not submit the official form, if it incorrectly refused to certify her because of its possible errors in connection with the second timeframe, or if it correctly refused to certify her because it did not have the information it required. In fact, Williams and her doctor submitted medical paperwork to Kaiser in September 2021. This raises a genuine issue of material fact—did Kaiser's own errors lead it to improperly deny Williams leave to which she was entitled and thus interfere with her FMLA rights?

Because the Court finds there are genuine issues of material fact as to Williams's FMLA interference claim, it need not address the remaining objections.

### C.    ADA and FMLA retaliation claims

Williams argues that the R&R incorrectly concluded there was no direct or indirect evidence of retaliation. Williams asserts she was "terminated and not rehired due to her need for intermittent leave, which is necessary due to her disability."[68] She also asserts the events at issue were "indisputably put into motion by [her] request for [a] bathroom accommodation."[69]

---

[67]    ECF 22-2, ¶¶ 74, 96.

[68]    ECF 35, at 20.

[69]    *Id.*

Because FMLA and ADA retaliation claims require similar legal analysis and depend upon the same set of facts, courts often address the claims together. *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018). To state a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in statutorily protected conduct, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two. *Id.* at 1329. The Eleventh Circuit construes the causal link "element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Zarza v. Tallahassee Hous. Auth.*, 686 Fed. Appx. 747, 753 (11th Cir. 2017) (quoting *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008)). Under the ADA, a request for a reasonable accommodation is a protected activity. *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).

A plaintiff can establish a causal connection by showing "close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). "Absent other evidence of causation . . .the temporal proximity must be very close." *Adams v. City of Montgomery*, 569 F. App'x 769, 774 (11th Cir. 2014). However, a close temporal proximity is insufficient if the defendant provides "unrebutted evidence" that the decision maker in the adverse employment action was unaware

of the protected activity. *Brungart v. BellSouth Telecomms. Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

First, contrary to Williams's assertions, the R&R correctly concluded that there is no direct evidence of retaliation.[70] Direct evidence requires a showing of retaliation *without* inference or presumption. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004), *abrogated on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006). The threshold for establishing direct evidence is high—"only the most blatant remarks" from which the intent can be seen as retaliation constitute direct evidence. *Id.* (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2001)). Williams argues that Kaiser admitted it fired her because she was unable to complete her essential job functions and the events that led to her firing were "put into motion by [Williams's] request for bathroom accommodation," so there is direct evidence of retaliation. But the Court would still have to make an inference that the *request* for a bathroom accommodation was the reason she was fired. There is no evidence that, for example, a supervisor told Williams, "you were fired because you requested an accommodation." At bottom, there is no direct evidence here.

---

[70] ECF 33, at 35.

Due to the lack of direct evidence of retaliation, the R&R applied the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The R&R assumed without deciding, and the parties do not dispute, that Williams made out a *prima facie* case of retaliation.[71] It then determined that Kaiser had proffered a legitimate reason for her termination, and ultimately concluded that Williams failed on the pretext prong and thus, recommended that summary judgment be granted in Kaiser's favor on this claim. Undersigned declines to adopt the R&R on this point and concludes that a reasonable jury could infer that Williams was fired in retaliation for exercising her rights under either the ADA or FMLA.

The Eleventh Circuit recently reviewed courts' reliance on *McDonnell Douglas* in analyzing defendants' entitlement to judgment as a matter of law. *See Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). "[W]hen using the *McDonnell Douglas* framework," courts should grant judgment as a matter of law only after "look[ing] beyond the prima facie case to consider *all relevant evidence in the record* to decide the ultimate question of intentional discrimination." *Id.* at 947 (emphasis added). Undersigned's review of the relevant cases is that evidence of

---

[71]   ECF 33, at 37.

pretext, like any other fact question under Rule 56, goes to the jury unless there is no reasonable inference of retaliation.

There is a reasonable inference that Kaiser retaliated against Williams. Williams requested a bathroom accommodation in August 2021. In September 2021, she submitted medical paperwork as part of the accommodations process. In that same time frame, she also asked Bodie to start the FMLA process for her. *Two weeks later*, she was removed from her position and placed on leave. This close temporal proximity alone is highly probative evidence. The causal connection is bolstered by Williams's testimony about the events surrounding her forced leave. While she was told that she was being forced to take leave because she had no more FMLA hours, she testified that she did not understand why she was now having problems recertifying for FMLA leave after she made her bathroom accommodation request, and felt that she was "being punished" for the request.[72] Additionally, for the prior four years, Williams had performed her job with the same disabilities she sought accommodations for in late 2021, which calls into questions the veracity of Kaiser's alleged reason for terminating and not rehiring Williams—that she needed intermittent leave and "failed to secure a job consistent with her medical limitations."[73] Based on the timing of her protected activity and

---

[72]   ECF 25, ¶ 18.

[73]   ECF 22-1, at 24.

removal from her job, combined with the unclear nature of Dandy and Bodie's testimony, a reasonable jury could infer that Kaiser acted with retaliatory intent.

## IV.    CONCLUSION

The Court **ADOPTS IN PART** and **DECLINES IN PART** the R&R [ECF 33]. Kaiser's motion for summary judgment [ECF 22] is **GRANTED** as to Counts I—III (the ADA discrimination and reasonable accommodation claims), but **DENIED** as to Counts IV-VI (the ADA retaliation claim, FMLA interference claim, and FMLA retaliation claim). The parties are **DIRECTED** to file a joint proposed Pretrial Order within 30 days of this Order.

**SO ORDERED** this 31st day of March, 2024.

_____
Steven D. Grimberg
United States District Judge